**SIGNED THIS: September 6, 2013**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 12-72023 |
| JEFFREY A. PARSONS, ) | |
| ) | Chapter 7 |
| Debtor. ) | |

# A M E N D E D   O P I N I O N

Before the Court are a Motion for Relief from Automatic Stay and a Motion for Abandonment, both filed by Travis McLeod. The motions relate to two tracts of land which Travis McLeod sold to the Debtor, Jeffrey Parsons, on a contract for deed in 2010. Mr. McLeod contends that the contract for deed was terminated and the Debtor's interest in the land was forfeited before this case was filed. Accordingly, he claims that the land is not property of the estate and his requested relief should be granted. The Chapter 7 Trustee disagrees and claims that Mr. McLeod

-1-

failed to comply with the notice provisions contained in the contract for deed and required by Illinois law to terminate the Debtor's interest in the land pre-petition. Because the Debtor's interests in the contract for deed and in the land subject to it were not effectively terminated before this case was filed, and because Mr. McLeod has not otherwise established his right to the relief he seeks, both motions will be denied.

## I. Factual and Procedural Background

In November 2010, Jeffrey A. Parsons ("Debtor") entered into a contract for deed with Travis McLeod to purchase two tracts of land in Pike County, Illinois for the sum of $1,526,250. The Debtor agreed to pay that sum plus 3.25% interest *per annum* by making a $200,000 down payment and monthly payments of $20,000 until October 1, 2012, when a balance of $957,405.31 would be due. The Debtor paid the down payment and made all of the required monthly installments through June 2012.

The contract for deed provided, *inter alia*, that a default by the Debtor would occur in the event of the non-payment of any sums due or the failure of the Debtor to perform any provision of the contract after having been given a 30-day notice to perform. In the event of default, Mr. McLeod had the right to retain the sums already paid under the contract for deed and regain possession of the land. The contract for deed also provided that any notices or demands required to be given could be served personally or by mail. If service was by mail, it was required to be made by certified mail, return receipt requested.

The contract for deed contained an acknowledgment that the land was enrolled in the federal Conservation Reserve Program ("CRP") and required the Debtor to assume an existing CRP contract and to indemnify and hold Mr. McLeod harmless with respect to the obligations under that CRP

contract. Another provision required the Debtor to pay for all labor or materials associated with constructing improvements on the land and prohibited the Debtor from allowing liens to attach to the land.

On March 1, 2012, a representative of the United States Department of Agriculture ("USDA") sent a letter to Mr. McLeod informing him that the Debtor had not completed the paperwork to assume the CRP contract and that Mr. McLeod would, therefore, be obligated to refund certain CRP payments previously received by him. On March 9, 2012, Mr. McLeod's attorney sent a letter to the Debtor notifying him of the correspondence from the USDA and reminding him of his obligation to assume the CRP contract. The letter stated that if the Debtor did not resolve the issues with the USDA regarding the CRP contract, the Debtor would be responsible for Mr. McLeod's damages and associated fees and costs. The March 9th letter was sent to the Debtor by priority mail with a delivery confirmation request but was not sent by certified mail, return receipt requested.

On May 24, 2012, Peters Heating & Air Conditioning, Inc. ("Peters") filed a mechanics lien with the Recorder of Deeds in Pike County, Illinois. The mechanics lien referenced the land subject to the contract for deed and claimed that the Debtor had failed to pay Peters for labor and materials provided to the Debtor for the construction of a building on the land. Peters' lien claim was in the amount of $91,941 plus interest, attorney fees, and costs. On June 11, 2012, Mr. McLeod's attorney sent the Debtor a letter regarding the Peters' mechanics lien which stated that the lien would constitute a default under the contract for deed "unless it is removed within 10 days after you receive notice that it has been filed." The letter then provided further that if "the lien is not removed within 10 days, then that will constitute a default" under the contract for deed which could result in a forfeiture of the Debtor's rights under the contract for deed. The June 11th letter was sent by certified mail, return receipt requested, and the return receipt was signed for by the Debtor on June 18, 2012.

On July 18, 2012, Mr. McLeod's attorney sent the Debtor a letter which stated that it was formal notification that Mr. McLeod was electing to terminate the contract for deed. The letter stated that pursuant to the contract for deed "possession of the property and all improvements on the property now reverts (sic) to the Seller, Travis McLeod." The letter was sent to the Debtor by priority mail with a delivery confirmation request but was not sent by certified mail, return receipt requested. The Debtor's subsequent tender of his July payment was rejected by Mr. McLeod.

On July 23, 2012, another mechanics lien was filed referencing the land subject to the contract for deed. Floyd D. Vetter and Land & Sea Consulting, Inc. jointly filed the lien in the amount of $51,358.31 plus interest, attorney fees, and costs, claiming that they had not been paid for labor and materials provided to the Debtor related to construction on the land. On September 9, 2012, Floyd D. Vetter filed another mechanics lien in the amount of $84,000 plus interest, attorneys fees, and costs for labor associated with project management of construction on the land. An action to foreclose the several mechanics liens remains pending in state court.

The Debtor filed his voluntary petition under Chapter 7 on September 9, 2012. Charles Covey is the Chapter 7 Trustee ("Trustee"). Mr. McLeod filed his Motion for Relief from Automatic Stay and Motion for Abandonment on June 28, 2013. In the motions, he claims that the Debtor's interests in the contract for deed and the Pike County land were terminated pre-petition and, accordingly, the Trustee cannot administer the land as an estate asset. Alternatively, Mr. McLeod claims that the estate has no equity in the land and, because this is not a reorganization case, he is entitled to the relief requested. The Trustee filed written objections to both motions. The Trustee claims that the Debtor's rights pursuant to the contract for deed were not effectively terminated pre-petition and that there is equity in the land which can be administered for the benefit of the Debtor's creditors.

Oral arguments on both motions were heard on July 30, 2013. Both Mr. McLeod and the

Trustee have subsequently filed briefs in support of their respective positions. The matters are ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Issues regarding the automatic stay and abandonment of estate property are core proceedings. *See* 28 U.S.C. §157(b)(2)(A), (G), (O).

## III. Legal Analysis

Relief from the automatic stay may be granted for cause or, if an action against property is stayed, relief may be granted if a debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. §362(d)(1), (2). When relief from stay is sought by a creditor in a Chapter 7 case, reorganization is not an issue, so the only question is whether there is equity to be administered for the benefit of creditors. *See Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). A party seeking relief from the automatic stay has the burden of proof on the issue of whether there is equity in the property, and the party opposing relief has the burden of proof on all other issues. 11 U.S.C. §362(g).

A trustee may abandon property of the estate that is burdensome or of inconsequential value and benefit to the estate. 11 U.S.C. §554(a). When a trustee does not voluntarily abandon property, a party in interest may request the court to compel abandonment, and a court may order a trustee to abandon property that it determines is burdensome or of inconsequential value or benefit to the estate. 11 U.S.C. §554(b).

Because Mr. McLeod claims that the contract for deed was terminated pre-petition, he asserts

that he is entitled to relief from stay for cause, and that the Trustee should be compelled to abandon the contract for deed and the land subject to it because it is of inconsequential value to the estate. Likewise, because Mr. McLeod claims that the Debtor has no equity in the land, he asserts that stay relief should be granted and the Trustee should be compelled to abandon it. Unfortunately for Mr. McLeod, his claims are not supported by the facts or the relevant authority and he cannot prevail.

### A. The Contract for Deed is Property of the Estate because it was Not Effectively Terminated Pre-Petition

When a bankruptcy case is commenced, an estate is created which consists generally of all of a debtor's legal and equitable interests in property. 11 U.S.C. §541(a)(1). The term "property" has been broadly construed and includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative[.]" *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). Because property rights generally derive from state law, bankruptcy courts look to state law to determine whether a debtor actually has any legal or equitable interest in property when a case is commenced. *Butner v. United States*, 440 U.S. 48, 55 (1979).

Here, the land subject to the contract for deed is located in Illinois and both the Debtor and Mr. McLeod are residents of Illinois. Illinois law controls the analysis of whether the Debtor had an interest in the contract for deed and the land subject to the contract when this case was commenced. *See In re Layton*, 138 B.R. 219, 221 (Bankr. N.D. Ill. 1992).

In Illinois, general contract law governs the rights of the parties to contracts for deed and such contracts are enforced to give effect to the intentions of the parties as shown by the express terms of the contract. *See Tobin v. Alexander*, 63 Ill. App. 3d 397, 400, 380 N.E.2d 45, 47-48 (1978); *Layton* 138 B.R. at 222. Because courts do not favor forfeitures, strict compliance with contract terms regarding forfeiture is required. *See Zeta Bldg. Corp. v. Garst*, 408 Ill. 519, 523, 97 N.E.2d

331, 334 (1951).

When a contract for deed buyer is in possession of the property subject to the contract, Illinois law provides that a pre-condition to maintaining an action for forcible entry and detainer to recover possession is a thirty-day notice to cure the default that gives rise to the forfeiture. 735 ILCS 5/9-104.1(a); *Eppers v. First Nat. Bank of Lake Forest*, 151 Ill. App. 3d. 902, 906, 503 N.E.2d 589, 591 (1987) (thirty-day notice to cure is required, and thirty-day notice to quit which was actually delivered was, therefore, inadequate under the statute). The statutory notice must be served personally or by registered or certified mail with return receipt requested. 735 ILCS 5/9-104.1(c).

Illinois law does not prescribe a specific form for notices of default or forfeiture of a contract for deed. Nevertheless, such notices should be clear and unambiguous and must convey the clear purpose of the notice. *See Brown v. Jurczak*, 397 Ill. 532, 543, 74 N.E.2d 821, 826-27 (1947); *Dahm, Inc. v. Jarnagin*, 133 Ill. App. 3d 14, 15, 478 N.E.2d 641, 643 (1985). And, the notices must strictly comply with the terms of the contract for deed. *See Tobin v. Alexander*, 63 Ill. App. 3d at 400-01, 380 N.E.2d at 48.

The first purported default notice sent to the Debtor was the letter from Mr. McLeod's attorney sent March 9, 2012, regarding the CRP contract issue. The letter references the specific provision in the contract for deed that obligated the Debtor to assume the CRP contract and requests the Debtor to contact the USDA representative "as soon as possible" to remedy the problem. The letter does not contain specific language saying that it is a notice of default under the contract for deed and sets no deadline for the Debtor to cure the problem. Mr. McLeod's attorney argues that the letter meets the requirements for a default notice under the contract for deed because it requested the Debtor to perform his obligations under the contract, and nothing more is required by the contract or Illinois law. The Trustee argues that the letter fails as a default notice because it includes words

such as "please" and "thank you" which he claims are inconsistent with making a demand. And, the letter does not include any actual demand for contract compliance.

This Court cannot find as a matter of law that the use of polite terms such as "please" and "thank you" negate an otherwise effective demand. That said, the terms of the letter suggest only that the Debtor will be liable for damages, fees, and costs if the CRP contract problem is not resolved. No mention is made of possible forfeiture. Thus, if the letter was intended to satisfy the notice requirement which is the precursor to forfeiture under the contract for deed, it certainly is lacking in clarity of purpose. But, this Court need not decide if the letter was sufficient notice of default under the contract for deed because, as the Trustee correctly points out, there is a larger problem with the March 9th letter. The letter was not served on the Debtor as required by the contract for deed.

Mr. McLeod's attorney sent the March 9th letter using priority mail with delivery confirmation instead of by certified mail with return receipt requested as required by the contract for deed. The proof of mailing shows that a receipt was issued by the Postal Service when the letter was mailed at the post office in Jacksonville, Illinois, on March 9, 2012. Handwritten on the receipt by the "mailer" is the Debtor's full name and address. The receipt also contains a tracking number, and the printout provided by Mr. McLeod's attorney shows that the letter was delivered in Athens, Illinois - where the Debtor resided at the time - on March 10, 2012. The printout does not show the specific address where delivery was made or whether delivery was made to a mailbox or to an individual. No return receipt for the March 9th letter exists because none was requested.

When a statute requires service of a notice by certified mail with return receipt requested, Illinois courts have consistently held that notice is not effectuated until the return receipt is signed by the addressee. *See, e.g.*, *Avdich v. Kleinert*, 69 Ill. 2d. 1, 8-9, 370 N.E.2d 504, 508 (1977). That same proposition has been extended to contractual obligations requiring a particular form of service

for notices. *See Thakral v. Mattran*, 156 Ill. App. 3d 849, 856, 509 N.E.2d 772, 776 (1987). Here, the terms of the contract for deed are plain and unambiguous in requiring service by certified mail, return receipt requested. No effort was made by Mr. McLeod's attorney to comply with that contract provision, and no explanation for the failure has been offered. Mr. McLeod and his attorneys were not free to ignore the notice requirements of the contract for deed. Because they did so, the March 9th letter was ineffective to trigger the thirty-day cure period under the contract for deed and, therefore, the letter cannot be used in support of the later notice of forfeiture.

The second purported notice of default was the letter sent to the Debtor on June 11, 2012, by Mr. McLeod's attorney regarding the Peters' mechanics lien. The letter was sent by certified mail with a return receipt requested, and the Debtor signed the receipt for the letter on June 18, 2012. Thus, the June 11th letter was served in compliance with the contract for deed. Nevertheless, the Trustee says the June 11th letter was not an effective notice of default because it misstated the cure period as ten rather than thirty days.

The contract for deed requires a thirty-day notice of default and Mr. McLeod does not claim otherwise. But, he argues that the statement which occurs twice in the letter that the Debtor would be in default unless the mechanics lien "is removed within 10 days" was simply a scrivener's error and not the type of mistake that should render the letter ineffective as a default notice. Mr. McLeod points out that errors in default notices have been held to not necessarily be fatal to the effectiveness of such notices. *See Hadie v. Erlandson*, 41 Ill. App. 2d 328, 190 N.E.2d 848 (1963) (abstract only) (incorrect statement of acreage not fatal where metes and bounds description was correct); *Layton*, 138 B.R. at 223 (misstatement of date of contract not fatal where all other information identifying contract was correct). Mr. McLeod argues that the Debtor and his attorney knew that pursuant to the contract for deed the Debtor had thirty days to cure and, in any event, the final notice of forfeiture

was not sent until thirty days had actually passed.

The Court cannot find that the use of "10 days" as the cure period in the letter was a scrivener's error. That suggestion is first made in Mr. McLeod's brief and is unsupported by any facts. Further, for reasons which are not entirely clear, Mr. McLeod's attorney attached to his brief a copy of an email sent on June 21, 2012 - exactly ten days after the June 11th letter - to the Debtor's attorney by the attorney who drafted the June 11th letter. The email asks for an explanation of what the Debtor is doing about the Peters' mechanics lien "at your earliest convenience" and says that he has talked with Peters' attorney and asked him to hold off for "a few days." The clear message of the email is that time is almost up. The email correspondence is consistent with the intended issuance of a ten-day cure notice which was expiring that day but not consistent with the now-claimed intended issuance of a thirty-day notice where twenty days would have remained in the cure period at the time. The use of "10 days" for the cure period in the June 11th letter was not a scrivener's error but rather a substantive error based on an inaccurate reading or understanding of the contract for deed.

Notwithstanding the cases cited by Mr. McLeod which suggest that errors in default and forfeiture notices may, under certain circumstances, be overlooked, the general principle remains that such notices must strictly comply with the terms of the contract. *See Tobin v. Alexander*, 63 Ill. App. 3d at 400-01, 380 N.E.2d at 48; *Zeta Bldg. Corp. v. Garst*, 408 Ill. at 523, 97 N.E.2d at 334. And, when a notice contains a serious, substantive defect, it is ineffective. *See Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 306-07, 660 N.E.2d 162, 166 (1995). Further, waiting out a correct notice period when an incorrect period was stated in a notice does not cure the defective notice. *Id.* Here, the Court agrees with the Trustee that the June 11th letter was inaccurate and misleading and, therefore, was too defective to constitute an effective default notice.

In the absence of an effective thirty-day default notice, the contract for deed does not allow for forfeiture. The service of an effective default notice is a required pre-condition of forfeiture. Here, the forfeiture notice was sent despite the problems with the default notices. But, even if one of the default notices had been effective, the forfeiture notice still would not have been effective because it was not served by certified mail with return receipt requested.

Mr. McLeod's attorney sent a letter to the Debtor on July 18, 2012, stating that Mr. McLeod had elected to terminate the contract for deed. This letter, like the March 9th letter, was sent by priority mail with delivery confirmation. But, the delivery confirmation shows only that the letter was delivered in Springfield, Illinois, on July 19, 2012. The confirmation does not include an address of actual delivery nor does it say that the delivery was made to a mailbox or to an individual. The contract for deed required mail notice to be sent by certified mail, return receipt requested, and no assertion is made that the Debtor waived that requirement.[1] The forfeiture notice was not properly served and, therefore, was ineffective. *See Thakral v. Mattran*, 156 Ill. App. 3d at 855-56, 509 N.E.2d at 776.

The Trustee points out that under Illinois law, Mr. McLeod had no right to retake possession without going through the statutory eviction process. 735 ILCS 5/9-102(a)(5). That eviction process requires the same thirty-day notice to cure served by certified mail, return receipt requested as the contract for deed required. 735 ILCS 5/9-104.1. Just as the notices sent by Mr. McLeod's attorney were not effective under the contract for deed, they were not effective under the statute.

Further, even if the notices had been effective, Illinois law provides that when a judgment for

---

[1] The July 19th letter has a notation at the top that it was also sent by email. It does not, however, say to whom it was sent by email or to what email address it was sent. Further, there is no allegation that the Debtor consented to service by email in lieu of the certified mail, return receipt requested method of service required by the contract for deed.

-11-

possession is entered based on the breach of a contract for deed, a buyer who owes less than 75% of the original purchase price is entitled to a stay of the judgment for a period of 180 days during which time the buyer may cure any defaults and reinstate the contract. 735 ILCS 5/9-110. The Trustee calculated the balance due on the contract as approximately $1,006,000 and, when compared to the purchase price of $1,526,250, asserts that the Debtor owed about 66% of the purchase price at the time the termination letter was sent. Accordingly, the Debtor would have been entitled to the stay of any judgment entered and would have been granted the additional time to cure provided by statute. When a debtor retains the right to cure afforded by the Illinois statute when a bankruptcy case is filed, a recognizable property interest exists which becomes property of the estate. *See In re Brown*, 249 B.R. 193, 199 (Bankr. N.D. Ill. 2000).

Because of the faulty notices and the failure to complete a statutory eviction, the Debtor's interests in the contract for deed and the land subject to it were not terminated pre-petition. Accordingly, the Debtor's interests in the contract and the land became property of the estate and subject to being administered by the Trustee. Mr. McLeod is not entitled to relief based on his claim that the Debtor had no interest in the contract or the land when this case was filed.

**B. Mr. McLeod Has not Met his Burden of Proof that the Estate Has "No Equity" in the Contract for Deed and the Land Subject to the Contract**

Mr. McLeod has the burden to prove that there is no equity in the contract for deed and the land subject to the contract for the Trustee to administer. 11 U.S.C. §362(g)(1). As a practical matter, proof of "no equity" should also establish that the value of the Debtor's interests in the contract and the land is inconsequential and of little or no value to the estate. 11 U.S.C. §554. Mr. McLeod plead in his motions that there was no equity but failed to address the issue in his brief. At the July 30th hearing, both parties stated that no evidentiary hearing on the motions was necessary and neither

party backtracked from that position in their briefs. The evidence on the issue of value is sketchy and most of it was presented by the Trustee rather than Mr. McLeod. The evidence, such as it is, does not support a finding of "no equity" or inconsequential value as to the contract for deed and the land subject to it.

The Trustee stated in his initial objections to Mr. McLeod's motions that, as of mid-July 2013, the balance due from the Debtor on the contract for deed including interest and late charges was $1,100,350.50. He also calculated that the 2011, 2012, and part of the 2013 real estate taxes were due in an aggregate amount of $9388.05. Mr. McLeod raised no objection to these calculations.

Both parties acknowledged that in July 2013, an offer to purchase a portion of the land that the parties refer to as Tract I was pending for the sum of $850,000. The Trustee also claimed that the purchaser was willing to take title to Tract I subject to the three outstanding mechanics liens which total in excess of $227,000. Mr. McLeod says in his brief that the deal for Tract I did not close because clear title could not be passed. That may well have been because of the dispute over whether the Debtor's interest had been forfeited pre-petition. With that issue now settled, that deal might be resurrected or a similar deal struck with a new buyer. Mr. McLeod does not argue otherwise.

The Trustee also says that the remaining portion of the land that the parties refer to as Tract II is currently listed for sale for $626,175. Tract II consists of 165 acres, making the listing price $3795 per acre, which the Trustee concedes is at the high end of the range for recreational property in Pike County, Illinois. But, the Trustee also has provided calculations showing that if a sale closes for Tract I along the lines of the deal previously pending, and Tract II sells for a price even far lower that its current listing price, equity still exists.

Mr. McLeod mentions in his brief a concern about the mechanics liens but does not provide a calculation of how those liens figure into his calculation of available equity. If a buyer of Tract I

was willing to pay $850,000 plus assume potential liabilities in excess of $227,000 as part of the deal - and it appears that a buyer, in fact, was willing to do so - then the value of Tract I is significantly higher than $850,000. Considering that value and the listing price of Tract II, the only conclusion that can be drawn is that there may well be equity in the contract and the land for the Trustee to administer.

Mr. McLeod also mentions the fact that he received a letter from Jeffrey Richardson, the Chapter 7 trustee in the related case of THR & Associates, Inc. ("THR"), claiming that the funds the Debtor used to make payments on the contract for deed were funds of THR and must be returned to the THR estate.[2] The letter was sent in November 2012, and the docket of the THR case indicates that no adversary complaint has been filed by Mr. Richardson to recover money from Mr. McLeod. At this time, Mr. Richardson's potential claim is speculative and cannot be used to support a finding of "no equity" in the contract and the land.

The Trustee must be given an opportunity to sell the land. His efforts to date have been frustrated by Mr. McLeod's insistence that the Trustee had no recognizable interest in the contract or the land. Unfortunately, it appears that a willing buyer with a reasonable offer may have also been frustrated in an effort to purchase Tract I for the same reason. Mr. McLeod must now cooperate with the Trustee to get the land sold and, in the process, get himself paid what he is owed under the contract for deed.

### IV. Conclusion

Mr. McLeod failed to establish that the Debtor's interests in the contract for deed and the land

---

[2] THR filed a voluntary petition under Chapter 7 on September 10, 2012, under case number 12-72022. The Debtor, Jeffrey Parsons, is the President and sole shareholder of THR.

subject to the contract had been successfully terminated pre-petition. Accordingly, the Debtor's interests in those assets became property of the estate when this case was filed. Mr. McLeod also failed to establish that the Debtor has no equity in the assets or that the assets are burdensome to the estate and should be abandoned. Mr. McLeod is not entitled to stay relief and the Trustee will not be compelled to abandon. As the situation may change if no buyer is found for the land within a reasonable period of time, the orders denying relief to Mr. McLeod will be without prejudice. Mr. McLeod is admonished, however, that he must work with the Trustee to achieve their mutual goal of sale of the land. The Court will not be receptive to renewed motions either in the short term or absent genuine cooperation in the sale process.

      This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

      See written Order.

###